IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HEDRICK G. HUMPHRIES, | ) | Case No. 03 C 3765 |
| | ) | |
| Plaintiff, | ) | The Honorable |
| | ) | Charles Kocoras |
| v. | ) | |
| | ) | |
| CBOCS WEST, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF FILING

To:   All Counsel of Record per attached Certificate of Service

PLEASE TAKE NOTICE that on July 27, 2004, the undersigned shall cause to be filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, **Plaintiff's First Amended Complaint,** a copy of which is herewith served upon you.

_____
One of the Attorneys for Plaintiffs

Elizabeth J. Hubertz
ROBINSON CURLEY & CLAYTON, P.C.
300 South Wacker Drive, Suite 1700
Chicago, Illinois 60606
(312) 663-3100 – Telephone
(312) 663-0303 – Facsimile

DOCKETED
JUL 2 8 2004

FILED
JUL 27 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## **CERTIFICATE OF SERVICE**

     I, the undersigned attorney, certify that I shall cause to be served a copy of Plaintiff's **First Amended Complaint** upon the following individual(s), via First Class Mail, messenger delivery, Federal Express, or Facsimile, as indicated, this 27th day of July 2004:

   __ First Class Mail     John F. Kuenstler
   ✓ Hand Delivery     Beau C. Sefton
   __ Federal Express    William R. Pokorny
   ✓ Facsimile          WILDMAN, HARROLD, ALLEN & DIXON
                             225 W. Wacker Drive,
                             Suite 3000
                             Chicago, Illinois 60606
                             Phone: (312) 201-2000
                             Fax: (312) 201-2555

                                                    _____
                                                    Elizabeth J. Hubertz

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HEDRICK G. HUMPHRIES, | Case No. 03 C 3765 |
| Plaintiff, | The Honorable<br>Charles Kocoras |
| v. | JURY DEMANDED |
| CBOCS WEST, INC., | |
| Defendant. | |

FILED
JUL 27 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED
JUL 28 2004

## FIRST AMENDED COMPLAINT

Plaintiff Hedrick G. Humphries for his First Amended Complaint states as follows:

### THE PARTIES

1. Plaintiff Humphries is African-American. He is a resident of Matteson, Illinois, located in Cook County, Illinois. Humphries was formerly employed by the defendant as an associate manager of its Bradley, Illinois restaurant.

2. Defendant CBOCS West, Inc., is a Nevada corporation with its headquarters in Lebanon, Tennessee. The Defendant operates a chain of restaurants and retail locations known as "Cracker Barrel Old Country Stores." Each location consists of a restaurant, featuring "home-style cooking," and a retail area, featuring rural-themed items. The acts set forth in this Complaint were permitted, authorized, tolerated, ratified, ordered and/or done by Cracker Barrel officers, agents, employees and/or representatives while actively engaged in Cracker Barrel's business.

### JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

4. The employment practices alleged to be unlawful were committed within the Northern District of Illinois. Venue is therefore proper under 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-(5)(f)(3).

5. Humphries has fulfilled all conditions precedent to the institution of this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* Humphries timely filed his charge of race discrimination on August 9, 2002 within 300 days of the occurrence of the last discriminatory act. He filed his complaint in federal court within 90 days of his receipt of his Notice of Right to Sue from the EEOC. Copies of the Charge and the Notice of Right to Sue are attached hereto.

## STATEMENT OF CLAIM

6. The Plaintiff has worked in the restaurant industry for more than 13 years. He was hired as an associate manager of the Cracker Barrel restaurant located in the Kankakee-Bradley-Bourbonnais area (hereafter "the restaurant") in November 1998. At each restaurant, Cracker Barrel employs a General Manager who supervises several Associate General Managers. In turn, the general manager is supervised by a District Manager who has responsibility for several Cracker Barrel locations.

7. For nearly three years, Humphries performed his duties well. At the annual evaluation, conducted in November 2000, he was told that his performance was satisfactory, and he received a raise.

8. In August 2001, Cracker Barrel fired the general manager of the restaurant, Donald Sessions, an African-American. Sessions had been general manager at that location since approximately 1997. A white manager, Steve Cardin, was transferred from Cracker Barrel's Tinley Park, Illinois location to serve as Acting General Manager of the restaurant. Immediately

2

following Cardin's arrival, nonwhite employees at the restaurant became the target of numerous disciplinary reports.

9.  Cardin made it clear that he regarded it as his job to reduce the number of African-Americans employed by the restaurant. He assured the white employees that he was "there for the white [employees]." Two of Humphries' white co-workers informed him of Cardin's comments.

10. On several occasions, Cardin offered his (low) opinion of Cracker Barrel's nonwhite employees. On a day when one of the restaurant's African-American cooks was absent, Cardin stated in front of several employees that the cook "must be drunk or drugged." When Cardin was asked why he thought this, Cardin replied "you know how *they* all are." Similarly, while talking to Humphries, Cardin made a disparaging reference to employee Tony Munez' "ten kids." When Humphries asked Cardin where he got the idea that Munez had a large number of children, Cardin replied, "you know how they are, those Mexicans all have a dozen kids."

11. Humphries was naturally upset at being on the receiving end of racially motivated discipline, designed to reduce the number of African-American and other nonwhite employees at the restaurant. In keeping with Cracker Barrel's nondiscrimination policy, Humphries went to District Manager William Christensen, Cardin's supervisor, at the end of August 2001, and complained to him about a verbal warning he had received since Cardin's arrival and about Cardin's remarks. Christensen wanted to know if there were any other witnesses to the racial remarks. Humphries told him that there were, but they were afraid to come forward. Christensen told Humphries not to worry about it, but did not otherwise look into the complaint or take any remedial action.

3

12.     On several occasions, Christensen and former General Manager Sessions had discussed Cardin's racism. Christensen told Sessions that Cardin could never be a general manager of a Cracker Barrel restaurant or "we'd be involved in political problems all the time." Indeed, Cardin, who had earlier been employed at the Bradley location, asked for a transfer to another location when Sessions was elevated to General Manager at Bradley, because he did not want to be supervised by a black man.

13.     Within a few days of Humphries' complaints to Christensen about the racial remarks and racially motivated discipline, he received three more written Employee Counseling Reports from Cardin, each described as "final."

14.     On September 1, 2001, Humphries received a "final" disciplinary report for allegedly using the wrong method to credit an employee's meal. The second "final" report, also issued on September 1, alleged that there was a deviation from Cracker Barrel's standard procedures for accounting. In response to this report, Humphries subsequently discovered the nature of the discrepancy and provided the information to Cardin who in turn was to contact Cracker Barrel headquarters in Lebanon, Tennessee. Despite Humphries' provision of corrected information to Cardin, the disciplinary report was not removed from Humphries' file, even after Humphries complained to Christensen about it.

15.     On September 3, 2001, the third Employee Counseling Report accused Humphries of leaving the restaurant door unchained, an action which would violate Cracker Barrel's Asset Protection Policy. The report did not specify when this alleged infraction occurred, or if anyone witnessed the alleged infraction, nor did it point to any harm that befell the restaurant as a result of this alleged infraction. Humphries had not in fact left the door unchained and complained

4

about this report to Christensen. Christensen insisted that there were witnesses to this incident but did not offer any further information.

16. In October, Cardin stepped down as Acting General Manager and returned to Tinley Park. Humphries was concerned that the racially motivated and retaliatory discipline he had received from Cardin would affect his annual evaluation. He expressed his concerns to Christensen. Christensen told Humphries that he would not consider the Cardin-originated discipline when evaluating Humphries' job performance. Humphries' annual review seemed to confirm what Christensen said, since he was given a satisfactory rating for the previous year's service (including the time in which he received the Employee Counseling Reports described above), was given a raise, and was thanked for his service by Christensen himself.

17. In late November 2001, Humphries witnessed the termination of an African-American server, Venus Green. Green was fired by one of Humphries' fellow Associate General Managers, a white man named Joe Stennett. Stennett, had been "on loan" to the restaurant from the Tinley Park Cracker Barrel location at the same time that Cardin had been temporarily transferred from Tinley Park to serve as Acting General Manager. Not only was Green's termination based on an incorrect perception of the facts, it also occurred without adherence to Cracker Barrel's established procedures for a person with her level of service – procedures that had been accorded to white employees under similar circumstances.

18. Humphries complained about what he considered a racially disparate and wrongful termination to Christensen. Christensen told Humphries disapprovingly that he was going "outside of management" for raising these concerns about Green's termination, but that Humphries should schedule a meeting with Ken Dowd, the new white General Manager of the

5

Bradley location, and with Humphries' fellow Associate Manager, Stennett, on December 6, 2001.

19. On December 5, before the meeting could take place, Humphries was terminated. At first, he was simply told that the safe was found open on Monday morning and that his employment would be terminated. No details, violations of procedure, or counseling reports were provided at that time. When he pressed for details, approximately one week later, he was given an Employee Counseling Report which informed him that he had been terminated for leaving the safe door open several nights earlier. The Report revealed that his accuser was Stennett, the co-manager who had wrongfully terminated Green and who had been summoned to a meeting with the Plaintiff to discuss her termination. Stennett was the only witness to Humphries' alleged infraction. No loss was alleged to have occurred as a result.

20. Upset at an unproven allegation to which he had been given no opportunity to respond coming so closely upon the heels of his latest discussion with Christensen about racism at the restaurant, Humphries asked Christensen for a written explanation of the reason for his termination. Christensen wrote Humphries on December 12, informing him that he was terminated, not merely for leaving the safe open on December 2, 2001, but because in September 2001, Cardin had given him a "final written warning" about leaving the store door unchained.

21. As a result of the Defendant's racially discriminatory actions, Humphries experienced severe emotional distress. He suffered financial hardship because he was the sole breadwinner for his family. In addition, Cracker Barrel deemed Humphries' termination as being "for cause" within the meaning of its ERISA plans, and denied him access to profit-sharing and pension benefits to which he otherwise would have been entitled. He still has not recovered from these losses.

## COUNT I
## DISCRIMINATION ON THE BASIS OF RACE IN
## VIOLATION OF 42 U.S.C. § 1981 AND TITLE VII

22. The Plaintiff restates and incorporates by reference Paragraphs 1- 21 above as part of this Count of the Complaint.

23. Cracker Barrel has discriminated against the Plaintiff with regard to discipline and termination because of race, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended, and in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended.

24. Cracker Barrel's conduct, as described above, was intentional, deliberate, reckless, willful and conducted with disregard of the rights of Plaintiff.

25. By reason of International's discriminatory employment practices, the Plaintiff has experienced extreme harm, including loss of compensation, wages, back and front pay, and other employment benefits and, as such, is entitled to all legal and equitable remedies, available under Title VII, as amended, and section 1981, as amended, including compensatory and punitive damages,.

## COUNT II
## RETALIATION IN VIOLATION OF SECTION 1981 AND TITLE VII

26. The Plaintiff restates and incorporates by reference Paragraphs 1-25 above as part of this Count of the Complaint.

27. Cracker Barrel has retaliated against the Plaintiff with regard to discipline and termination, in violation of 42 U.S.C. § 2000e-3 and 42 U.S.C. § 1981, as amended.

28. Cracker Barrel's conduct, as described above, was intentional, deliberate, reckless, willful and conducted with disregard of the rights of Plaintiff.

29. By reason of Cracker Barrel's discriminatory employment practices, the Plaintiff has experienced extreme harm, including loss of compensation, wages, back and front pay, emotional distress, anger, and other employment benefits and, as such, is entitled to all legal and equitable remedies available, under Title VII as amended and under section 1981, as amended, including compensatory and punitive damages.

**WHEREFORE**, Plaintiff Humphries respectfully requests the following relief:

    a.    Compensatory damages, including back pay and compensation for past and future monetary and non-monetary losses;

    b.    Front-pay in lieu of reinstatement;

    c    Attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

    d.    Liquidated and/or punitive damages; and

    e.    Any additional relief the Court deems just, including declaratory and injunctive relief.

**HEDRICK G. HUMPHRIES**

By: _____
One of his attorneys

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

By: _____
One of his attorneys

Elizabeth J. Hubertz
ROBINSON CURLEY & CLAYTON, P.C.
300 South Wacker Drive • Suite 1700
Chicago, Illinois 60606
Phone: (312) 663-3100 •Facsimile: (312) 663-0303

8

# CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA<br>☒ EEOC | 210A203462 |

Illinois Dept. of Human Rights                    and EEOC
*State or local Agency, if any*

NAME *(Indicate Mr., Ms., Mrs.)* — Mr. Hedrick G. Humphries

HOME TELEPHONE *(Include Area Code)*: (708) 748-5715

STREET ADDRESS: 901 School Ave., CITY, STATE AND ZIP CODE: Matteson, IL 60443

DATE OF BIRTH: 06/01/1948

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

NAME: Cracker Barrel Old Country Store
NUMBER OF EMPLOYEES, MEMBERS: Cat D (501 +)
TELEPHONE *(Include Area Code)*: (815) 936-6022
STREET ADDRESS: 50 Ken Hayes Dr., CITY, STATE AND ZIP CODE: Bradley, IL 60915
COUNTY: 091

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*:
☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER *(Specify)*

DATE DISCRIMINATION TOOK PLACE
EARLIEST: 12/05/2001    LATEST: 12/05/2001
☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s))*:

I began my employment with Respondent on or around November 23, 1998. My most recent position was Associate Manager. Beginning in or around August 2001, the store location where I was assigned came under new management. I began to be subjected to unfair and unjustified disciplinary write-ups while white managers I worked with had engaged in the same activities I had and were not disciplined. A General Manager also made offensive comments about other employees based upon their race and national origin, which I reported to my District Manager. In or around early December 2001, I discussed with respondent General Manager and District Manager a concern that Respondent was not subjecting black and white employees to the same performance standards and that black employees were subjected to less favorable standards. The District Manager responded by telling me that I should not appear to "be outside the management group." On or around December 5, 2001, I was allegedly terminated as a result of the disciplinary write-ups despite my protests. I believe that Respondent store management and also Respondent district management has engaged in a practice of subjecting all black employees to less favorable treatment than white employees. I further believe that Respondent has engaged in a practice of replacing black employees with white employees and reducing the number of black employees.

AUG - 9 2002

I believe I was retaliated against and discriminated against on the basis of my race, black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY — *(When necessary for State and Local Requirements)*<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>*(signature)*<br>Date 8-9-02   Charging Party *(Signature)* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(Month, day and year)* |

EEOC FORM 5 (Rev. 07/99)

**CHARGING PARTY COPY**



## Equal Employment Opportunity Commission

### DISMISSAL AND NOTICE OF RIGHTS

To: Hedrick G. Humphries  
901 School Avenue  
Matteson, IL 60443  

Certified Mail No.: 7001 1940 0003 8832 3641  

From: Equal Employment Opportunity Commission  
Chicago District Office  
500 West Madison Street  
Suite 2800  
Chicago, Illinois 60661  

[ ] On behalf of a person aggrieved whose identity is  
CONFIDENTIAL (29 CFR § 1601.7(a))

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 210A203462 | Karen Lanners, Investigator | 312-353-0902 |

*(See the additional information attached to this form.)*

YOUR CHARGE IS DISMISSED FOR THE FOLLOWING REASON:

[ ] The facts you allege fail to state a claim under any of the statutes enforced by the Commission.

[ ] Respondent employs less than the required number of employees.

[ ] Your charge was not timely filed with the Commission, i.e., you waited too long after the date(s) of the discrimination you alleged to file your charge. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[ ] You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conferences, or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your charge. You have had more than 30 days in which to respond to our final written request.

[ ] The Commission has made reasonable efforts to locate you and has been unable to do so. You have had at least 30 days in which to respond to a notice sent to your last known address.

[ ] The respondent has made a reasonable settlement offer which affords full relief for the harm you alleged. At least 30 days have expired since you received actual notice of this settlement offer.

[ X ] The Commission issues the following determination: Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] Other (*briefly state*) _____

### - NOTICE OF SUIT RIGHTS -

[ X ] **Title VII and/or the Americans with Disabilities Act:** This is your NOTICE OF RIGHT TO SUE, which terminates the Commission's processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction. If you decide to sue, you must sue **WITHIN 90 DAYS** from your receipt of this Notice; otherwise your right to sue is lost.

[ ] **Age discrimination in Employment Act:** This is your NOTICE OF DISMISSAL OR TERMINATION, which terminates processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction. If you decide to sue, you must sue **WITHIN 90 DAYS** from your receipt of this Notice; otherwise your right to sue is lost.

[ ] **Equal Pay Act (EPA):** EPA suits must be brought within 2 years (3 years for willful violations) of the alleged EPA underpayment.

3-3-03

On behalf of the Commission  

John P. Rowe, District Director

Enclosures  
Information Sheet  
Copy of Charge  
Respondent(s)     Cracker Barrel Old Country Store

EEOC Form 161 (Test 5/95)